UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Dawn Smith, Mark Tarras,
Jim Cox, Justin Durbin, Patrick Parris,
Dewayne Klipple and Edward Willson,
on behalf of themselves and other past and
present employees similarly situated,

                Plaintiffs,

                                  Civ. No. 04-1403(RHK/AJB)
                                  **MEMORANDUM OPINION**
                                  **AND ORDER**

v.

Heartland Automotive Services, Inc.,
d/b/a Jiffy Lube,

                Defendant.

---

Paul J. Lukas, Steven A. Smith, and Rachhana T. Srey, Nichols Kaster & Anderson, PLLP, Minneapolis, Minnesota, for Plaintiffs.

Kimberly A. Jones, Blackwell Sanders Peper Martin LLP, Kansas City, MO, and Michael S. Ryan, Murnane, Conlin, White & Brandt, St. Paul, Minnesota, for Defendant.

---

**Introduction**

Seven named plaintiffs who are current and former Jiffy Lube Store Managers ("Plaintiffs") have sued Defendant Heartland Automotive Services, Inc., d/b/a Jiffy Lube ("Heartland"), on behalf of themselves and other employees similarly situated, under the Fair Labor Standards Act ("FLSA"). Plaintiffs allege that they have been improperly classified as exempt executives and thus deprived of overtime pay. Heartland has now moved to decertify this action, arguing that Plaintiffs are not similarly situated for purposes

of a collective action under § 216(b) of the FLSA. For the reasons set forth below, the Court will grant Heartland's Motion to Decertify.

## Background

**A.     Factual and Procedural Background**

Heartland owns Jiffy Lube stores, which offer quick oil changes and other basic car maintenance services to customers. Plaintiffs are current and former Jiffy Lube Store Managers from the Minneapolis/St. Paul area. The position of Store Manager is the only position at a Jiffy Lube store classified as exempt from overtime pay. All Jiffy Lube Store Managers are governed by the same job description and are subject to the same supervisory structure: Store Managers report to and are supervised by district managers, who in turn report to regional managers. Heartland is organized into thirteen different regions, in fourteen different states. Each region is sub-divided into as many as five, and as few as two, districts. District sizes vary, ranging from two to fourteen stores.

In early 2004, Plaintiffs, as similarly situated employees, initiated a collective action under § 216(b) of the FLSA, 29 U.S.C. § 216(b). Plaintiffs claim they were improperly classified as exempt executives and denied overtime wages as a result. They allege that Heartland implemented a centralized policy of keeping its stores on unreasonably tight labor budgets, thereby requiring Store Managers to work long hours performing primarily non-exempt duties in order to meet the centrally imposed labor budget for their stores. (Mem. in Opp'n at 9-10.) According to Plaintiffs, a collective action under § 216(b) is the appropriate mechanism by which to bring these claims because

2

"all Jiffy Lube Store Managers hold the exact same position and perform precisely the same job duties on a daily basis." (Id. at 9 (emphasis in original).)

In October 2004, Plaintiffs were granted conditional certification as a class, and were allowed to send out notices to Store Managers alerting them to their ability to opt-in to the instant action. (Doc. No. 71 (October 18, 2004 Order adopting Report and Recommendation granting Plaintiffs' Motion for Judicial Notice).) Notice of the action was subsequently sent to all current and former Jiffy Lube Store Managers across the country who worked during the three-year statutory period. By the end of the opt-in period, 261 current and former Store Managers from 13 different states, supervised by over 40 different district managers, filed consents to join this action.[1]

**B.     Heartland's Motion to Decertify this Action**

Heartland has moved to decertify this action on the grounds that Plaintiffs' challenge to their status as exempt employees requires a fact intensive inquiry and discovery has established that the members of the class are not "similarly situated" for purposes of an FLSA action. (Mem. in Supp. at 2-3.) Heartland further asserts that, to the extent Plaintiffs have demonstrated they are similarly situated, those commonalities do not support Plaintiffs' claims of mis-classification under the FLSA. (Id. at 11.) Plaintiffs

---

[1]During discovery, a number of plaintiffs were dismissed as outside the applicable statute of limitations and/or voluntarily withdrew. According to Plaintiffs, there are now 242 plaintiffs involved in this action. Concurrent with its Motion for Decertification, Heartland has filed a Motion to Dismiss certain opt-in plaintiffs for failure to participate in discovery. The Court will address this Motion below. (See infra p. 20.)

counter that discovery has revealed precisely the opposite—that they are similarly situated within the meaning of § 216(b)—and therefore, decertification would be an improper and inefficient result.

**C.    The FLSA**

While the Court does not consider the merits of Plaintiffs' claims on a decertification motion, understanding the FLSA standards regarding the ultimate determination of exempt status is necessary in order to determine whether Plaintiffs are similarly situated in relevant respects.  See, e.g., Bradford v. Bed Bath & Beyond, Inc., 184 F. Supp. 2d 1342, 1345 (N.D. Ga. 2002).

The parties are largely in agreement regarding the main factors that will be determinative of the merits of Plaintiffs' claims. (See Mem. in Supp. at 9-10; Mem. in Opp'n at 32.)  Plaintiffs allege that Heartland has violated § 207 of the FLSA, which provides that an employee engaged in commerce must receive one and a half times the regular rate of pay for hours worked in excess of forty hours per week.  29 U.S.C. § 207(a)(1).  Employers are not, however, required to provide overtime benefits to any employee employed in a bona fide executive capacity (those employees are referred to as "exempt").  29 U.S.C. § 213(a)(1).  Heartland classifies its Store Managers under the executive exemption, meaning they are not entitled to overtime pay regardless of the number of hours they work in a week.

Under the FLSA, an employee may be exempt as an executive if she spends more than 50% of her time performing executive tasks or, if less than 50% of the time is spent

on executive tasks, these tasks nevertheless predominate or define the job. 29 C.F.R. § 541.700 (2004); 29 C.F.R. § 541.103 (1973). Prior to a change in the pertinent regulations[2], the "short test" to classify employees for purposes of the executive exemption, which the parties agree applies to Plaintiffs' claims, included the following criteria for an employee to qualify as exempt from overtime: (1) the employee is paid a salary of more than $250 per week, (2) the employee's <u>primary duty</u> is the management of the enterprise or a subdivision, and (3) the employee regularly directs the work of two or more employees. <u>Id.</u> § 541.1(f) (1973) (emphasis added). The parties also agree that the main issue to be determined on the merits is whether Plaintiffs' primary duty is management. (Mem. in Opp'n at 1; Reply Mem. at 2.)

To determine whether an employee's primary duty involves management, in addition to the time spent on managerial tasks, a court can consider (1) the relative importance of the managerial duties as compared with other types of duties; (2) the frequency of the employee exercising discretionary powers; (3) the employee's relative freedom from supervision; and (4) the "relationship between the employee's salary and the wages paid to

---

[2]Changes to the executive exemption requirements became effective August 23, 2004. 29 C.F.R. § 541.100. Therefore, members of the purported class will have different legal standards applicable to them depending on whether they were store managers only before August 23, 2004, or whether they were store managers after that date as well. Under the most current regulations, a "bona fide executive" is defined in similar terms as under the pre-2004 regulations. Unlike the former regulations, however, an exempt executive under the current regulations must be paid at least $455 per week and must have the authority to hire and fire other employees or, at a minimum, have their recommendations as to hiring, firing, advancement, promotion, or any other change of status of other employees given particular weight. 29 C.F.R. § 541.100(a)(1), (4) (2004).

other employees for the kind of nonexempt work performed by the [exempt employee]."

See Auer v. Robbins, 65 F.3d 702, 712 (8th Cir. 1995).

### Standard of Decision

To recover unpaid overtime compensation under the FLSA, § 216(b) provides that employees may collectively sue an employer. Specifically, it states:

> Any employer who violates [the minimum wage or maximum hours provisions of this title] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover [such] liability may be maintained . . . in any . . . court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

29 U.S.C. § 216(b) (emphasis added). Unlike class actions under Rule 23, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id. Determining whether such a collective action is the appropriate means for prosecuting an action is in the Court's discretion. See Glass v. IDS Fin. Servs., Inc., 778 F. Supp. 1029, 1081 (D. Minn. 1991).

The fundamental inquiry in determining whether a collective action under § 216(b) is appropriate is whether or not the plaintiffs are "similarly situated." 29 U.S.C. § 216(b). Plaintiffs bear the burden of establishing that they are similarly situated. Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996) (ADEA claim). While the FLSA does not define the term "similarly situated," courts have held that plaintiffs "need show only that

their positions are similar, not identical to the positions held by the putative class members." Id. (internal quotations omitted); see also Morisky v. Public Serv. Elec. and Gas Co., 111 F. Supp. 2d 493, 498 (D.N.J. 2000) ("[A] collective action would only be appropriate where the plaintiffs make some showing that the nature of the work performed by other claimants is at least similar to their own." (internal quotations and alterations omitted)).

Courts generally approach this inquiry in two stages. First, a plaintiff may seek conditional certification of a collective action, authorizing notice to potential opt-in plaintiffs. See Bradford, 184 F. Supp. 2d at 1345. This first look at the appropriateness of the representative action is not rigorous; rather, the Court must only determine that plaintiffs have established a colorable basis for their claim that a class of similarly situated plaintiffs exists. Severtson v. Phillips Beverage Co., 141 F.R.D. 276, 278-79 (D. Minn. 1992).

In the instant action, the Court conditionally certified a collective action pursuant to the FLSA and authorized notice to potential opt-in plaintiffs. (Doc. No. 71 (October 18, 2004 Order adopting Report and Recommendation granting Plaintiffs' Motion for Judicial Notice).) In doing so, the Court specifically reserved the issue of whether discovery would "demonstrate that a collective action of Store Managers is not the appropriate manner in which to conduct this litigation" for future consideration. (Id.) The Court specifically noted that "the determination to allow the providing of notice to persons who have been employed as Store Managers by Defendant is based on a less than full and substantial

7

record." (Id.)

At the second stage, now germane, a defendant may move to decertify the class if, after discovery, the evidence shows that members of a conditionally certified class are not similarly situated. See Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1214, 1214 n.8 (5th Cir. 1995) (ADEA claim). The defendant's motion to decertify is analyzed under a stricter post-discovery standard. At this stage,

> the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives - i.e. the original plaintiffs - proceed to trial on their individual claims.

Id. at 1214. "During this second stage analysis, a court reviews several factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." Thiessen v. General Elec. Capital Corp., 267 F.3d 1095, 1103 (10th Cir. 2001) (ADEA claim) (internal quotation omitted).

**Analysis**

The Court does not determine on the pending Motion whether Plaintiffs properly would be classified as exempt employees; rather, the only issue presently before the Court is whether Plaintiffs are similarly situated. See Bradford, 184 F. Supp. 2d at 1345. In conducting this analysis, the Court will consider the factors relevant to the second stage of the procedure under § 216(b). See Thiessen, 267 F.3d at 1103.

**A.      Employment and Factual Settings of Plaintiffs**

Plaintiffs' theory of their case, for certification purposes, proceeds in two steps. First, they argue that Heartland has implemented a centralized corporate policy whereby tight labor budgets are imposed on individual Jiffy Lube stores.[3] Thus, in accordance with this centralized policy, "[i]n order to keep labor numbers down and within budget, Store Managers were expected to work on the cars and interact with customers rather than pay overtime to the 'non-exempt' employees." (Mem. in Opp'n at 18.) Second, Plaintiffs argue that "[a]s a direct result of [those] policies and practices . . . Store Managers are forced to spend the majority of their time adding oil, changing oil filters, checking filters, changing transmission fluid, changing lights, vacuuming, washing windows, and performing various other non-exempt tasks." (Id. at 27.) Plaintiffs argue that this common factual scenario among class members establishes that they are similarly situated for purposes of collective action under § 216(b).

It has been recognized in the certification context that "to determine which employees are entitled to overtime compensation under the FLSA depends on an individual, fact-specific analysis of each employee's job responsibilities under the relevant statutory

---

[3]In support of their argument that the policy is centralized, Plaintiffs present evidence that Heartland holds monthly meetings for regional managers who then pass on information gained at those meetings to district managers. District managers are also required to attend meetings held by Heartland, although these meetings only occur once or twice a year. Plaintiffs argue that Heartland's centralized structure supports their argument that Store Managers operate under the same factual and employment settings. (Mem. in Opp'n at 10-16.)

exemption criteria." Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1271 (M.D. Ala. 2004) (internal quotation omitted).  Under the FLSA's executive exemption, among the relevant criteria are considerations such as: (1) the employee's time spent on managerial tasks; (2) the frequency of the employee exercising discretionary powers; and (3) the employee's relative freedom from supervision.[4]  Auer, 65 F.3d at 712.

As an initial matter, the Court notes that this is not a case in which Plaintiffs can rely on a common job description as evidence that a collective action is the appropriate method of bringing their mis-classification claims.  The job description governing Plaintiffs' positions as Store Managers sets out mainly managerial tasks.[5]  In fact, Plaintiffs largely disavow reliance on the job description in arguing they are similarly situated.  (See Mem. in Opp'n at 27 (stating plaintiffs perform mainly non-exempt tasks "rather than performing the . . . 'essential management duties' set out in their job description").)  Plaintiffs do, however, claim that the job description "raises serious issues as to the Store Managers'

---

[4] Other relevant criteria are the "relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the [exempt employee]," and the relative importance of the employee's managerial duties as compared with other types of duties.  Auer, 65 F.3d at 712.  The parties do not focus on these considerations for purposes of the instant Motion.

[5] Among the duties listed on the job description are the following: "Provide overall direction to Jiffy Lube personnel to meet and exceed store goals"; "Monitor workflow to ensure that vehicles are serviced within specific time limits"; "Provide prompt and courteous customer service; answer questions; resolve problems and complaints; ensure consistent recommendation of services needed to the customer"; and "Provide daily supervision and training to personnel, including hiring, scheduling, coaching, counseling, corrective action, performance evaluations, terminations and monitor staffing levels and adjust accordingly in a timely manner." (Jones Aff. Ex. B.)

classification as 'exempt' because of the requirement that Store Managers 'work on cars' and interact with customers." (Mem. in Opp'n at 17.) But the FLSA clearly does not require complete abstention from non-exempt duties in order for the exempt classification to be proper. See, e.g., Murray v. Stuckey's, Inc., 939 F.2d 614, 618 (8th Cir. 1991). Therefore, Plaintiffs may not rely on the job description itself as generalized evidence that they are mis-classified as exempt employees; "[i]t is only once [the Court considers] the Plaintiffs' testimony as to the degree to which other tasks are performed that the application of the exemption" becomes an issue. Holt, 333 F. Supp. 2d at 1271; see also Mike v. Safeco Ins. Co. of America, 274 F. Supp. 2d 216, 220 (D. Conn. 2003) (denying certification at the notice stage where the job description at issue was disavowed by the plaintiff as not representative of the type of work he performed).

Plaintiffs rest mainly on the first of the exemption criteria—the amount of time Store Managers spent on managerial tasks—in arguing they are similarly situated. Plaintiffs have presented class-wide evidence that "the majority of their time [was spent] performing the same routine, non-management duties as every other Jiffy Lube employee, rather than performing the so-called 'essential management duties' set out in their job description."[6] (Srey Aff. Exs. 1, 2 (setting forth deposition testimony and declarations from plaintiffs); see also Mem. in Opp'n at 27; 27-29 (same).) Plaintiffs' testimony

---

[6]The Court does not come to a conclusion regarding whether Plaintiffs would be able to show that all of the duties they classify as "non-management" duties are in fact non-exempt duties for purposes of the FLSA.

11

demonstrates that from 70-90% of their time was spent on duties such as working on cars.[7] (Id.) According to Plaintiffs, this similarity among class members is largely dispositive of the certification issue because, "[a]t this stage, it is only relevant that Plaintiffs are similarly situated with regard to the fact that they spent <u>nearly all of their time performing the exact same routine, non-management duties</u> as non-exempt Jiffy Lube employees." (Mem. in Opp'n at 30 (emphasis in original).)

The Court determines that Plaintiffs rest too heavily on the similarity within the class regarding the time spent on non-exempt duties factor. The case law is clear that "if an employee spends less than 50% of his time on managerial duties, he is <u>not</u> presumed to have a primary duty of non-management." Auer, 65 F.3d at 712 (emphasis added). While time spent on non-managerial duties is a relevant factor that may be considered in exemption analysis, "the person 'in charge' of a store has management as his primary duty, even though he spends the majority of his time on non-exempt work and makes few significant decisions." Murray, 939 F.2d at 618 (internal quotation omitted). This is not to say that Plaintiffs cannot raise the time spent on non-exempt duties factor as part of their mis-classification case, but rather that their case for certification cannot rest solely on this

---

[7]Heartland questions the credibility of this evidence, citing data gathered from the computer system (Heartland's point of sales system ("POS")) employed in Jiffy Lube stores to track data from each store. According to Heartland, the POS data shows that eight plaintiffs who testified to spending 80 to 90% of their time working on cars did not do so. (Reply Mem. at 9.) Heartland apparently "randomly selected and attached two weeks of data from some of the Plaintiffs cited in the Opposition" in comparing testimony with the POS data. (Id. at 9, n.5.)

similarity, as it is not a dispositive showing. Id.; see also Holt, 333 F. Supp. 2d at 1273-75 (denying certification in FLSA case where plaintiffs presented testimony that they spent the majority of their time on non-managerial tasks, but other evidence indicated that the court would need to inquire as to the "daily tasks of each putative collective action member to determine whether they are similarly situated").

This leaves for the Court's consideration whether Plaintiffs have established they are similarly situated in other relevant respects—specifically the frequency with which Store Managers exercise discretionary power and their relative freedom from supervision. Heartland argues that an analysis of Plaintiffs' showing on those factors counsels strongly in favor of decertifying this action. Specifically, Heartland contends that there is a lack of uniformity among Plaintiffs with respect to how much control district managers exercised over employee scheduling and discipline, which is a potentially determinative issue in an FLSA analysis. (Reply Mem. at 7; Mem. in Supp. at 22-24.) According to Heartland, Plaintiffs have highlighted "only a portion of the record to identify commonalities that do not ultimately support the alleged misclassification," which ignores the pertinent question of whether there are enough similarities between and among Plaintiffs to make a generalized determination regarding the propriety of the executive exemption. (Reply Mem. at 12.)

The Court agrees, and finds significant the discrepancies between and among the named plaintiffs and the opt-in class members with respect to a Store Manager's ability to exercise discretion, perform management tasks, and act independently of the district

manager. For example, named plaintiffs Cox and Smith testified that every aspect of their performance as Store Managers was controlled by their district managers. (See, e.g., Cox Dep. Tr. at 168 ("my supervisors controlled everything I did and said"); Smith Dep. Tr. at 91 ("most of the stuff that I did was being told by [the district manager]").) However, various other plaintiffs testified to having much more control over their stores, and more discretion in the direction of employees. (See e.g., Dark Dep. Tr. at 41 ("I was running the shop, doing other duties, but I was the go-to guy."); Doyle Dep. Tr. at 114-15 (testifying that he is still watching what is going on in the shop, directing employees, and running the shop when he works on cars)).

      Differences also exist regarding the amount of control various Store Managers were able to exercise over hiring, firing, and discipline of non-exempt employees in their stores. (Compare Cox Dep. Tr. at 175 (testifying that he was not allowed to hire anyone) with Schwartz Dep. Tr. at 53 (testifying that he hired between 50 and 75 employees, and did not have to consult with his district manager on hiring decisions). Furthermore, while named plaintiffs Cox and Smith testified that they could not discipline, suspend, or terminate store employees without the district manager's approval (Cox Dep. Tr. at 48-9, 180, 244, 250; Smith Dep. Tr. at 121), other Store Managers testified that they possessed more discretion and power when it came to disciplining and terminating employees (see, e.g., Luckie Dep. Tr. at 39, 54, 97 (testifying he made sure employees followed procedures, and part of his "main responsibilities included disciplining"); Schwartz Dep. Tr. at 33-35, 54-55 (testifying he disciplined and fired employees without the district manager's approval, and

14

implemented his own disciplinary system)).

Testimony from various plaintiffs also shows that the extent of their authority and the oversight they were subjected to by their district managers varied significantly. (See Furrell Dep. Tr. at 90 (extent of district manager's involvement with employee scheduling depended on the particular district manager); Miron Dep. Tr. at 41 (same); Couture Dep. Tr. at 17 (certain district managers told him which employees to send home during slow times); Castaneda Dep. Tr. at 37-36 (he did not have to submit his employee schedule to the district manager for approval); see generally Hayes Aff. Exs. M, N (testimony from Store Managers indicating the varied involvement of their district managers and amount of managerial discretion exercised by Store Managers).) The evidence presented by Heartland indicates that significant differences exist among Plaintiffs with respect to the degree of district manager involvement in the running of the stores.

Plaintiffs give little credence to these discrepancies, arguing that "it is completely irrelevant that the Plaintiffs' day-to-day experiences may have differed with regard to the extremely minimal amount of time they actually spent performing 'management' tasks." (Mem. in Opp'n at 30.) According to Plaintiffs, Heartland's evidence showing some variation in the day-to-day experiences of Store Managers is undercut by Plaintiffs' showing that virtually all Store Managers spent the vast majority of their time on non-management tasks. (Id.)

However, the amount of discretion a Store Manager has, and the relative amount of control he or she exercises over the employees and operations of the store, are crucial

15

factors to be considered in an FLSA exemption analysis. See, e.g., Murray, 939 F.2d at 618 ("[T]he person 'in charge' of a store has management as his primary duty. . . .") Furthermore, it is under circumstances such as those present in the instant case—where the employee does <u>not</u> spend the majority of her time on management duties—that the consideration of these factors comes into play. <u>Auer</u>, 65 F.3d at 712 (identifying these considerations as "pertinent factors to determine whether [an employee's] primary duty is management <u>if he spends less than 50% of his time performing managerial duties</u>" (emphasis added)). It necessarily follows that Plaintiffs' argument (that dissimilarities between certain Store Managers in their performance of exempt duties are irrelevant <u>because</u> of Plaintiffs' similarity in time spent on non-exempt duties) cannot prevail under this standard; the type and quality of managerial duties performed by various plaintiffs will be squarely at issue on the consideration of the merits. <u>See id.</u> The Court determines that Plaintiffs have failed to demonstrate that they are similarly situated with respect to the amount of control and discretion exercised by Store Managers in the class, and this consideration weighs heavily against the action continuing as a collective one.

Accordingly, while the Court recognizes that Plaintiffs have made a showing of similarity with respect to some aspects of their positions as Store Managers, given the fact intensive nature of the exemption analysis, Plaintiffs have not satisfied the Court that they are similarly situated to the extent necessary to make collective treatment of their claims proper and efficient under § 216(b) of the FLSA.

**B.     Defenses available to Heartland**

Heartland intends to assert individual defenses to many of Plaintiffs' claims, due to the individualized and fact intensive nature of the exemption analysis under the circumstances of this case. According to Heartland, "substantial evidence exists calling into question the credibility of Plaintiffs' claims, including . . . testimony of employees Plaintiffs supervised, district and regional policies and practices, POS data . . . and Plaintiffs' own resumes touting their management responsibilities at Heartland." (Reply Mem. at 15-16.) Plaintiffs also assert state law claims in several of the states in which they were employed, some of which set forth different parameters for the executive exemption, implicating other possible defenses. (Id.)

In addition, Heartland points out that the California Plaintiffs present a difficult hurdle to certification. California Store Managers executed "Exempt Employee Agreements," acknowledging, among other things, that they were expected to spend more than 50% of their time engaged in management duties and agreeing to inform Human Resources immediately if their management tasks did not exceed 50% of their working time in any work week. (Hayes Aff. Ex. R.) Plaintiffs do not rely on testimony from any California Store Managers in arguing that time spent on non-exempt duties outweighs time spent on managerial duties, nor do they address the "Exempt Employee Agreements" at all. (Mem. in Opp'n at 27-29.) The Court concludes that the consideration of this factor weighs against certifying the class for collective representation.

Plaintiffs' only response to Heartland's presentation on the issues of defenses is that Heartland "can put forth only one common defense to the Plaintiffs' claim for

overtime compensation under the FLSA—the executive exemption." (Mem. in Opp'n at 37.) According to Plaintiffs, the defense may be applied to and refuted by all of the plaintiffs through generalized testimony. (Id.) However, as discussed above, Plaintiffs have not shown that they are similarly situated on many of the fact-specific issues that must be addressed at a trial on the merits of their mis-classification claim. Accordingly, the finding that Plaintiffs are not similarly situated with respect to their factual and employment situations on material factual issues, together with the presence of the state law claims and the agreement signed by the California Plaintiffs, create cumbersome defense issues that weigh against certifying the class for collective action.

**C.    Fairness, Manageability, and Procedural Considerations**

Plaintiffs allege that "decertifying this action will create more chaos in the federal court system than keeping the case here . . . as one collective action." (Mem. in Opp'n at 38.) According to Plaintiffs, decertification "will affect twenty-two U.S. District Courts in eleven different states." (Id. at 38-39.) However, given the Court's determination that Plaintiffs are not similarly situated with respect to key issues in the exemption analysis, the pursuit of individual actions is a necessary result. Furthermore, the Court determines that many Plaintiffs have likely benefitted from the implementation of class-wide consolidated discovery as to many of the issues relevant to their FLSA claims against Heartland. Accordingly, the Court determines that Plaintiffs are not overly prejudiced by the Court's conclusion that a collective action is not appropriate under the circumstances of this case. In addition, the Court will stay this order for a period of 60 days, during which time the opt-

in plaintiffs may re-file individual claims.

**D.        Heartland's Motion to Dismiss for Failure to Participate in Discovery**

Heartland has also moved to dismiss with prejudice the claims of certain opt-in plaintiffs who have failed to participate in discovery.[8]  At oral argument, however, counsel for Heartland made clear that Heartland would have no objections to the claims of the opt-in plaintiffs being dismissed <u>without</u> prejudice.  Given the Court's decision to decertify the class of opt-in plaintiffs, Heartland's Motion to Dismiss for Failure to Participate in Discovery will be denied as moot.

## Conclusion

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that:

   (1)     Defendant's Motion for Decertification (Doc. No. 156) is **GRANTED**;

   (2)     Defendant's Amended Motion to Dismiss for Failure to Participate in Discovery (Doc. No. 168) is **DENIED AS MOOT**; and

   (3)     this Order is **STAYED** for a period of 60 days.[9]

---

[8] The plaintiffs who are subject to Heartland's Motion to Dismiss fall into four categories: plaintiffs who 1) did not appear for scheduled and confirmed depositions; 2) indicated that they would withdraw from the case when they were confronted with depositions; 3) entirely failed to respond to interrogatory and other discovery requests; or 4) served un-executed interrogatory responses.

[9] Both parties have proposed that, in the event of an Order decertifying this action, such an Order should be stayed for a period of time so as to allow those individual plaintiffs adversely affected to pursue their individual claims.  (Mem. in Supp. at 3, n.3; Mem. in Opp'n at 4, n.3.)  Accordingly, this Order will be stayed for 60 days in order to toll any applicable statute of limitation.  The Court assumes that Plaintiffs' counsel will furnish a

Dated: December 12, 2005        s/Richard H. Kyle
                                RICHARD H. KYLE
                                United States District Judge

---

copy of this Order to the opt in plaintiffs and advise them of their rights with respect to individual claims against Heartland.